EHNERT, Respondent, vs. MEWS, Appellant.

*November 23—December 10, 1912.*

*Negligence: Collision on street: Contributory negligence: Evidence: Questions for jury.*

1. In an action for personal injuries sustained in a collision between a buggy in which plaintiff was riding and a team of horses driven by defendant, a finding by the jury that plaintiff was free from contributory negligence is *held* to be sustained by the evidence, which tended to show, among other things, that plaintiff was on the right side of the street, going at a lawful rate of speed, and had the right of way under a city ordinance;

that defendant was crossing the street at a rapid rate, exceeding the speed limit under the ordinance; and that he drove into the plaintiff without fault on her part.

2. Evidence in such case that the plaintiff had turned out or made a curve in order to pass in front of another team which was crossing in the same direction as defendant but nearer to her, would not, even if true, establish negligence on her part as a matter of law.

APPEAL from a judgment of the circuit court for Milwaukee county: F. C. ESCHWEILER, Circuit Judge. *Affirmed.*

This action was brought to recover for personal injuries resulting to the plaintiff while she was riding in a single top buggy going southerly on the west side of Eleventh street in the city of Milwaukee. The defendant, who was driving a team of horses, collided with the plaintiff on Eleventh street at the intersection of Vliet street, causing the injuries complained of. The answer admits the collision and denies all other allegations of the complaint. A motion for directed verdict in favor of the defendant was denied, and the jury returned the following verdict:

"(1) Was the defendant guilty of a want of ordinary care which was a proximate cause of plaintiff's injury? *A.* Yes.

"(2) Ought the plaintiff, in the exercise of ordinary care, to have seen defendant's team in time to have avoided the injury? *A.* No.

"(3) Was the plaintiff driving at an unreasonable rate of speed at and just prior to the time of the accident? *A.* No.

"(4) If you answer either question 2 or question 3 'Yes,' then was such want of ordinary care so found a proximate cause of plaintiff's injury? *A.* ——.

"(5) At what sum do you assess plaintiff's damages? *A.* $4,000."

Motions were made for judgment in favor of the defendant notwithstanding the verdict, to change the answers to the first, second, and third questions of the verdict and for judgment upon the verdict as so amended, and for a new trial, all of which were denied. Due exceptions were filed to the rulings

of the court in the various particulars above named. Judgment was entered in favor of the plaintiff upon the verdict, from which this appeal was taken.

For the appellant there was a brief by *Reukema & Lemke,* and oral argument by *Otto A. Lemke.*

For the respondent there was a brief by *Churchill, Bennett & Churchill,* and oral argument by *W. H. Churchill.*

KERWIN, J.   The jury answered all the questions in favor of the respondent, and the controlling question in the case is whether such findings are supported by the evidence.

The assignments of error raise two questions: (1) Whether the evidence is sufficient to support the verdict; and (2) Whether the court below erred in instructing the jury and in refusing to instruct.

There is no doubt whatever but that the evidence is ample to warrant the jury in finding that defendant was guilty of negligence which proximately caused the injury, and the only room for contention is upon the contributory negligence of the respondent.

Counsel for appellant very strenuously urges upon us, both in his brief and on oral argument, that there is not sufficient evidence to support the finding of the jury that the plaintiff was not guilty of contributory negligence.   In view of counsel's insistence upon this point we have carefully examined all the evidence touching the question and are forced to the conclusion that the finding has support in the evidence.   The collision occurred at the intersection of Eleventh and Vliet streets in the city of Milwaukee in the evening of October 12, 1910.   It was getting dark.   Eleventh street runs north and south and Vliet street east and west.   A city ordinance was put in evidence limiting the speed of vehicles drawn by horses to eight miles an hour, and to four miles an hour crossing streets running north and south.   The ordinance further provides that on streets and highways of the city vehicles going in

a northerly or southerly direction shall have the right of way over vehicles going in an easterly or westerly direction. At the time of the collision the respondent was driving south along the west side of Eleventh street in a buggy drawn by one horse, which was very gentle, a family-broke horse kept for hire to families and women. The buggy was a new, strong livery buggy. The appellant was driving west on Vliet street in a baker's delivery wagon drawn by two young, lively horses. Respondent was driving at a "moderate rate," "not as fast as five or six miles an hour." Appellant was driving at a "faster gait," "going at a pretty good rate of speed." The evidence further tends to show that when respondent got near Vliet street she looked up and down the street east and west to see if everything was clear, that she saw nothing in sight, and drove across over the north track and then heard the crash; she did not go fast, because the horse would not go fast; she was perfectly familiar with Eleventh street and the crossing where the accident occurred and knew it was an intersection of several streets, and that it is a busy place at that hour of the day. Respondent's buggy was badly smashed, the right hind wheel was entirely torn off and the top smashed entirely by the collision. The place of collision was at a point about twenty feet east of the west curb line of Eleventh street. Respondent testified that she did not see appellant's team before the accident happened and did not see how the team ran into the buggy. There is some evidence that respondent turned to the southwest to pass a team just before the accident. This is denied by respondent. One of respondent's witnesses on cross-examination testified:

"A team was going westward on Vliet street and *Mews* was also going westward or northwesterly on Winnebago street. That team from Vliet street crossed Eleventh street, going straight up Vliet street. Plaintiff passed that team and went ahead of it. When plaintiff went ahead of that team *Mews* was right aside of that team. That team and *Mews* were both going westward and *Mews* was right next to that team.

*Miss Ehnert* went south ahead of that team, and after she passed that team is when *Mews* ran into her. In order to pass *Mews's* team she made a little bow there that brought her over Eleventh street on the crossing. She made that bow in order to be able to pass the other team. If she had not made that bow she would have run into that other team, and would have run into *Mews.*"

The evidence of respondent is quite positive that she drove carefully across and was on the lookout for the entire distance of forty feet north of the north curb line of Vliet street. There is also evidence that there was another team coming down Vliet street at the time of the collision, and that the three teams came together on Eleventh and Vliet streets; that the appellant's team was going at a fair speed, but slacked down when he got close "into the bunch there;" that he tried hard to stop, but still the team went into respondent's buggy.

There is evidence that at the time of the collision appellant came up and respondent tried to get out of his way; that appellant had a young team and tried to check them, and naturally in checking the team the pole went in through the wheel and hit the top and knocked the buggy around.

It would serve no useful purpose to review the evidence in detail. It clearly tends to show that the respondent was where she had a right to be, on the west side of Eleventh street, and was going at a lawful rate of speed and had the right of way under the ordinance; that the appellant was going at quite a rapid rate of speed, exceeding the speed limit under the ordinance, and that he drove into the respondent without any fault or negligence on her part,—at least the jury would be entitled to so find. Under these circumstances the question of respondent's negligence was clearly for the jury.

The numerous railway-crossing cases cited by appellant bearing upon the "look and listen" rule, for obvious reasons are not controlling here. Much stress is placed upon *Weber v. Swallow,* 136 Wis. 46, 116 N. W. 844, by counsel for ap-

pellant, but a careful examination of that case will show that it is very different in its facts from the instant case. The collision there occurred between a bicycle and an automobile, and the relative position of the parties, the opportunities for seeing and observing, and the duty resting upon the plaintiff to have observed and avoided the automobile when it emerged from behind the car, were so conclusively established as to leave no question for the jury on the issue of contributory negligence. The instant case presents no such situation.

Much stress is also placed upon the fact that the injury was occasioned by respondent turning out. But the evidence as to turning out or curving is denied, and, even if true, it by no means establishes negligence on the part of respondent as matter of law. Respondent was instantly put in a place of danger without fault on her part by getting into the "bunch." Even if she did turn or curve under such circumstances it was for the jury to say whether such act was negligence which contributed to the injury.

Appellant excepts to certain parts of the charge. We have carefully examined the charge and find that it contains no prejudicial error. Certain requests to charge were made which were refused, which refusal is assigned as error. We think the requests were properly refused. We cannot say upon the record that the damages are excessive.

*By the Court.*—The judgment is affirmed.